RALPH BERG and MARY O. BERG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Berg v. Commissioner
Docket No. 899-72.
United States Tax Court
T.C. Memo 1975-230; 1975 Tax Ct. Memo LEXIS 146; 34 T.C.M. (CCH) 1006; T.C.M. (RIA) 750230; July 14, 1975, Filed *146 Gary C. Randall and Thomas B. Tilford, for the petitioners. Matt Stanley, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency of $14,091.83 in the Federal income tax of petitioners for 1967. Concessions having been made, it remains for us to decide if petitioner Ralph Berg recognized income on the receipt of 7,500 shares of stock in Real Estate Equities Corporation on January 5, 1967. FINDINGS OF FACT Certain facts have been stipulated and, as stipulated, are found. Petitioners filed a joint Federal income tax return for 1967 with the District Director of Internal Revenue, Seattle, Washington, and were residents of Spokane, Washington, when the petition herein was filed. "Petitioner" shall henceforth be used with reference to Ralph Berg, exclusively. Real Estate Equities Corporation (sometimes referred to as Equities) was organized under the laws of the State of Washington on May 5, 1966, by Robert Phillips (Phillips), a physician; Robert C. Sheffels (Sheffels); and J. Harlow Tucker (Tucker), the corporation's promoter. The organizers planned that Equities should acquire a number *147 of medical office buildings, the occupants of which would be invited to invest in the corporation. Among the properties which they wished to acquire, was the Paulsen Medical and Dental Building in Spokane. Sheffels had procured an option on this property by delivering to its owners a promissory note in the amount of $100,000, payable in the event Equities failed to exercise the option. To raise the funds necessary to exercise the option, Tucker engaged actively in a promotional campaign during the spring and summer of 1966. Among those whom he solicited was petitioner. Petitioner was a thoracic and cardiovascular surgeon, practicing in Spokane. He looked very favorably on the plans of Equities' organizers, and therefore agreed to invest $75,000 in the corporation. Later he increased his investment to $80,000. Petitioner invested in Equities believing that his cost per share would not exceed the bases per share of the corporation's three organizers. This did not prove to be the case. Their bases were as follows: [1]
Phillips
$2.53 per share
Sheffels
$2.60 per share
Tucker
$2.50 per share Petitioner's cost basis per share, however, was $3.33 *148 When he became aware of this discrepancy petitioner confronted Tucker, demanding an adjustment. Fearing that petitioner might withdraw his investment or initiate litigation, Tucker transferred to him 7,500 shares worth $15,000, on January 5, 1967. This transaction reduced petitioner's average basis per share from $3.33 to $2.54. By statutory notice dated December 22, 1971, respondent determined that petitioner recognized income on receipt of the shares in the amount of their fair market value. OPINION The transfer of the 7,500 shares effected an adjustment in petitioner's purchase price per share. We must decide if the adjustment was required by petitioner's original agreement with Tucker; for in that case, petitioner will have recognized no income on receipt of the 7,500 shares. Pinkney Packing Co.,42 B.T.A. 823 (1940). At trial petitioner testified unequivocally that when he agreed to invest in Equities, he had been assured by Tucker that he would participate on terms as favorable as those enjoyed by the corporation's three organizers. Respondent called upon Tucker to refute this testimony; but an apparently poor recollection of his agreement with the *149 petitioner prevented Tucker from refuting petitioner's testimony as to its terms. In view of Tucker's eagerness to secure petitioner's investment, it seems not at all unlikely that he would have agreed to such terms as petitioner described. We therefore accept petitioner's testimony as accurate and, in consequence, hold that he recognized no income on the receipt of the 7,500 Equities shares. Decision will be entered under Rule 155.
Footnotes
1. All figures are approximations and have been computed with reference to a fifteen-to-one stock split which took place during the period under consideration.↩